**FILED IN CHAMBERS**
**U.S.D.C ATLANTA**

Date: Jul 28 2022

**KEVIN P. WEIMER**, Clerk

By: Sonya Nuckolls
Deputy Clerk

# United States District Court

NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA

v.

Luis Alberto Robles-Monroy

**CRIMINAL COMPLAINT**

Case Number: 1:22-MJ-0666

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about July 27, 2022, in Clayton County, in the Northern District of Georgia, defendant did, knowingly and intentionally possess with intent to distribute a controlled substance, said act involving at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, pursuant to Title 21, United States Code, Section 841(b)(1)(A),

in violation of Title 21, United States Code, Section 841(a)(1).

I further state that I am a Task Force Officer and that this complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.   Yes

*Howard W. Spitzer*
Signature of Complainant
Howard W. Spitzer

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. *Sworn to me by telephone pursuant to Federal Rule of Criminal Procedure 4.1.*

| July 28, 2022 | at | Atlanta, Georgia |
|---|---|---|
| Date | | City and State |

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer

*Russell G. Vineyard*
Signature of Judicial Officer

SAUSA Rachel S. Lyons
Rachel.Lyons@us.af.mil

# AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Howard W. Spitzer, a Task Force Officer of the Drug Enforcement Administration (DEA), depose and state under penalty of perjury that the following is true and correct to the best of my knowledge and belief:

## A. Introduction

1. I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. By this affidavit, I submit that probable cause exists to believe that Luis Alberto ROBLES-Monroy committed narcotics offenses by knowingly and intentionally possessing with the intent to distribute a controlled substance, said act involving at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

## B. Training and Experience

3. I am currently employed as a Task Force Officer with DEA's Atlanta Divisional Office, Atlanta-Carolinas HIDTA Group 2, and have been so employed since January 2017. I am a Georgia POST certified law enforcement

officer employed by the Spalding County Sheriff's Office. Before becoming a task force officer, I was assigned as a patrol deputy, criminal investigator and a narcotics investigator. In these roles, I have investigated violations of the Official Code of Georgia Annotated (O.C.G.A.), including murder, rape, robbery, sexual assault, child molestation, aggravated assault, theft, and drug offenses. In 2003 I became a narcotics investigator. As such, I have received investigative training in subjects such as drugs and dangerous drug investigations.

4. In connection with my official DEA duties, I investigate criminal violations of federal drug laws and related offenses, including violations of Title 21, United States Code, Sections 841, 843, 846, 848, 856, 952, 960, and 963, and Title 18, United States Code, Sections 1952, 1956, and 1957. I have received training, both formal and informal, in the enforcement of the drug laws, the investigation of drug trafficking and money laundering organizations, drug recognition and terminology, undercover operations, interviewing techniques, financial/money laundering investigations, and the use of electronic surveillance.

5. During the course of my assignment with DEA, I have become familiar with and have used many of the traditional methods of investigation, including, without limitation, visual surveillance, electronic surveillance, informant and witness interviews, consensually recorded telephone

conversations, wiretap investigations, defendant debriefings, the use of confidential sources, undercover operations, execution of search warrants, the seizure of drug evidence, and controlled purchases of drugs, among others. I have participated in numerous drug investigations (including involving cocaine, cocaine base, methamphetamine, 3,4-methylenedioxymethamphetamine ("MDMA" or "Ecstasy"), and marijuana), in which traditional methods of investigation were used, that have resulted in the arrests of individuals who manufactured, smuggled, received, and distributed controlled substances, and where illegal narcotics and narcotics proceeds were seized. In connection with those and other narcotics cases, I have conducted follow-up investigations relating to the laundering and concealment of assets, the analysis of bank and other financial records, and the identification of co-conspirators through ledgers, telephone bills, records, and photographs.

C. **Sources of Information**

6. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from other law enforcement agents and witnesses. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom I have spoken or whose report I have

reviewed. Such statements are stated in substance, unless otherwise indicated.

Wherever in this affidavit I state a belief, such belief is based upon my training and experience and the information obtained through this investigation.

7. Because this affidavit was prepared for the limited purpose of supporting a complaint against the individual listed herein, I have not included each and every fact known about this investigation. I have set forth only those facts that I believe are necessary to establish the required basis for a criminal complaint. I do not rely upon facts not set forth herein in reaching my conclusion that a criminal complaint should be issued, nor do I request that this Court rely upon any facts not set forth herein in reviewing this Affidavit in support of the application for a criminal complaint.

## Probable Cause

8. On July 27, 2022, DEA Atlanta-Carolinas High Intensity Drug Trafficking Area Task Force Group 2 ("HIDTA 2") received information from a source of information[1] (SOI) in reference to an organization engaged in the distribution of controlled substances in and around the metro Atlanta area, within the Northern District of Georgia.

---

[1] The Source of Information ("SOI") is providing information in exchange for possible consideration in potential future felony drug charges. The SOI is familiar with the distribution of methamphetamine and has provided credible information to agents in the past that has led to the seizure of multiple kilograms of methamphetamine, cocaine, fentanyl, firearms, and multiple arrests. No criminal history could be located on the SOI.

9. On July 27, 2022, the SOI advised agents that an unknown Hispanic female was going to meet an unknown Hispanic male at a business parking lot located at 1544 Tara Road, Jonesboro, Georgia, The Tienda Carniceria Las Lupitas, for the purpose of the male receiving multiple kilograms of methamphetamine.

10. At approximately 12:00 p.m., agents initiated surveillance in the area of the business parking lot. The SOI later stated that this transaction would occur at approximately 5:30 p.m.

11. At approximately 5:21 p.m., the SOI informed agents that the Hispanic male would arrive shortly in a white car. At approximately 5:37 p.m., while observing the parking lot agents observed a white Toyota Corolla bearing Georgia registration TBV2188 arrive at the business. The Corolla parked near the front corner of the parking lot adjacent to the Carniceria. After a few moments agents observed a tall Hispanic male, later identified as ROBLES, exit the Corolla and enter the Carniceria. A few moments later ROBLES exited the Carniceria and got back into the Corolla. Agents watched as Robles sat in the Corolla. As ROBLES sat in the Corolla agents received information from the SOI that the male was in a white Toyota Corolla.

12. At approximately 5:47 p.m., agents observed a full-sized white Ford work van with ladders on the roof enter the parking lot. An

older Hispanic male was driving the van and a Hispanic female occupied the front passenger seat. The two appeared to be scanning the parking lot, looking around as they entered the lot. Agents watched as the van backed into a parking space two spaces away from the Corolla. A gray Toyota Tacoma was parked in between the two vehicles. After the van parked, agents observed the Hispanic female exit the van and walk to the rear of the Corolla where she paused a moment looking around the lot. The female then approached the driver door window and conversed very briefly with ROBLES before she returned to the passenger side of the van and disappeared from view for a moment. She was then observed carrying a heavy-looking medium-sized box from the passenger side of the van. The female opened the rear passenger side door of the Corolla, put the box on the back seat, and then closed the door. ROBLES then immediately backed out of the parking space and exited the parking lot traveling on Tara Road towards Tara Boulevard. The female got back into the van and it also left the lot.

13. Agents followed the Corolla and communicated their observations to troopers of the Georgia State Patrol. Troopers were already in the area and were familiar with the tip agents received. At

approximately 5:58 p.m, GSP conducted a traffic stop on the Corolla for a window tint violation.

14. During the traffic stop ROBLES appeared to be extremely nervous. GSP asked ROBLES about his travel plans and he responded that he was coming from Kroger and going to Norcross, Georgia. When asked if he had any drugs in the vehicle, ROBLES paused for a lengthy time and answered, "not that I know of." GSP asked the question again and ROBLES did not respond. Troopers then used a K9 to conduct a free-air sniff of the Corolla; the K9 indicated to the presence of drug odor coming from the area of the driver's door and open window of the Corolla. A search of the vehicle was then conducted. The box agents observed the female place in the passenger side back seat contained 14 separate plastic freezer/storage bags all containing a substance consistent with crystal methamphetamine[2].

---

[2] The substance field-tested positive for methamphetamine and weighed 14.08 kilograms.